Mr. Hayden. Good morning, your honors. If it pleases the court, my name is Roger Hayden. And I'm here with my colleague, Nathan Brill. We represent Wayne Cohen, a Maryland resident in his various fiduciary capacities. This is an appeal from an order of the Eastern District of Virginia in Alexandria denying a motion to dismiss certain counterclaims and third-party complaints filed by Wayne Cullen. Mr. Cullen operates in his several fiduciary capacities as personal representative of the estate of Diane Z. Kirsch of Maryland Probate Estate. As successor trustee of a family trust she created as part of an estate plan prior to her death. And of the so-called Cullen Trust created under the terms of this family trust, again, created under the laws of Maryland, we view it as sort of a sub-trust of the family trust that was created as part of her estate plans. Now, we've placed many issues of reversible error by the lower court before the court. We view it as a type of decision tree. The court's decision as to some of these will influence the outcome of others and come in some new things. And some things we see as separate and survive whatever the decisions of this court would be as to any particular subject matter. Of course, this case focuses on a 21 percent interest in the Lee Graham Limited Partnership that the decedent owned before her death and then assigned it and transferred it to her family trust, a standard probate tool to avoid and minimize the need to do formal probate and to manage assets that are placed in it. In fact, this 21 percent interest was an inheritance that she had received from her father along with her brother Paul Zafis, Mr. Zafis, had also inherited this and other investment opportunities. Mr. Zafis, of course, acted as the general partner of this partnership and as the business person in the transactions. This case focuses on the operation and effect of Section 6.02 of the 1984 Limited Partnership Agreement. And our contention is in setting the objective law of contracts that prevails in Virginia and most all jurisdictions is that when each of the words are read and given to effect, that provision as found by the lower court contrary to the findings of the lower court, it did not restrict the pre-death transfer to the family trust. It did not render the transfer void and of no legal effect upon death as found by Judge O'Grady. And it did not render the post-death transfer to the Cullen Trust void. In fact, Your Honor, we don't see how a court can create a defeasance of title as vested in the family trust on death as found by the law that we could find or are familiar with. It's not like a tenancy by the entirety where it operates by law. There's just no law. These assignments were valid. How were they valid under the agreement? Where in the agreement is there support for your argument that the assignment was valid? Well, Your Honor, my position is the assignments are valid. They were effective. If they violated the agreement. I know, Your Honor, they did not. And if you look at the agreement, it all comes down to, isn't it? It does come down to the issue of what that agreement said on an objective base. Yes, Your Honor. And on an objective basis, that agreement had one restriction. It said that the limited partnerships shall be assignable subject to one restriction. And that was in part. I think so, too. A trigger by a bona fide written offer to purchase is six. So it's 602 a only triggered by a bona fide offer to purchase. That's what it's clear terms. OK. So in other words, if you your view is, if you wanted to give, not sell, give your interest to someone by way of a trust or of a will, you may do so, because the only restrictions under 602 a go to bona fide offers to purchase. That's exactly our contention. And we think the words are clear. And so that if you are involved with a third party, the only time there's any comment at all is that there's a purchase on a 602 a. If it's a gift by intervivals trust or just a gift or by will, there are no restrictions whatsoever and doesn't even need to be addressed. It doesn't need to be addressed, this agreement. In fact, the agreement says the interest of each limited partnership and the partnership shall be assignable. So why then is an E is more than a sale discussed. E says the sale, which would be basically the bona fide offer to purchase. Or other transfer by a partner, whether by intervivals or by will, they may be done without the restriction. Why would you need to mention that? Because under your reading, they wouldn't be restricted anyway, would they? Well, Your Honor, I will grant the court that this is not the most artfully agreed. No, no. I'll agree with you on that, but that's not. Right. I understand that's not your question, Your Honor. No, no. Let me state it for you again so we'll know. You said that as far as you are concerned in reading this document, the only restriction is on a sale to a third party by way, yes, sale to a bona fide offer to a third party. But yet that same section, I guess, 602, different subsection, it comments positively on protection offered for other kind of transfer by a family member. Your argument to me seems to treat the family disposition less favorably than a third party who's unknown to the family. Isn't that? Well, Your Honor, my only response, I don't think it treats it less favorably. In fact, it doesn't restrict it all, the gift at all. It does it less favorably because the document has to specifically protect family members when it doesn't have to specifically protect non-family members. That's what I mean by less favorable treatment. Well, I guess under that analysis, but going back to the objective rule of contracts, those words are simply not in the contract that transfers to family members, transfers outside of family members by gift or by relative. You see what those, those words either come close to being absurd or unnecessary if you, if they don't apply to anybody under 602. Why would you have an exception under E if they don't apply? Well, if there is, the E does apply. You could sell it to a relative. You could sell it. I know you can, but the contract specifically provides that a transfer other than a sale and division by will to a family member don't need the right of first refusal. But your theory is everybody in the whole wide world is covered that way by implication. When there's an express provision to allow family be covered. Why isn't that superfluous on that allowance? Sale or other transfer, other transfer by will. Why isn't that completely superfluous under your reading of 602A? Well, it's not completely superfluous again, Your Honor, because if there's a sale, bona fide sale. No, no, no. I said other transfer or will. The word sale I left out. Okay. But another transfer, I don't know what they meant by that, but another transfer. The overall question I have is when you look at this agreement as a whole, tell me why you think I'm wrong. The partners do seem to have some preference for keeping the shares within the family. It's not a it's not an absolute preference in the sense that if the existing partners fail to match the bona fide offer, then you can give it to the bona fide offeror. So it's a, but they do want a qualified preference given to family members. That seems to me part of it. And that qualified preference is protected by right of first refusal. And the document as a whole says you can sell outside the family under these particular conditions, but I'm not sure you can bequeath outside the family. I mean, that's what it these different pieces seem to add up to. And that is if it's going to go outside the family, family members should have a right of first refusal. And if they don't want to buy it, they know that it probably will go to the bona fide offeror, but at least the family members will have that shot. Now, if you say, well, you can bequeath it outside the family. Then you are denying the family members what the agreement in its totality seems to preserve for them, which is not absolute control, but a right of first refusal. And I don't it. I'm not sure how I can square a sort of where you can bequeath this to an individual in England who has no connection whatsoever with the family. But if you want to sell it to that same person, family members have a right of first refusal and to buy the individual's interest on the terms offered by the bona fide offeror. And your position doesn't seem to me to leave the entire agreement intact or what they were trying to accomplish through the agreement, which was to provide some, but not absolute protection to family members. They didn't want to provide a hard and fast ironclad rule because they wanted family members to have some chance to accept the bona fide offer. Well, Your Honor, with all due respect, I understand what can be read into the agreement, but it's not what the agreement says. And it may be what the intent was by the parties or may not. We don't know because we've never been through discovery. But the long and short of it is under objective reading, those words are not in this agreement. But there's a second part to this, Your Honor, which is a new issue before the court, is whether or not the economic interest could be transferred or whether that transfer attempts to restrict it in the way this agreement attempts to restrict it is an unreasonable restraint on alienation. Did you raise that below? I did raise that below, Your Honor. We cited the cases. I had a colloquy with Judge O'Grady about it. I may not have used the words, but we certainly cited the cases. Your opposing counsel is vociferous and saying you didn't raise that argument. I understand, Your Honor. And I think in our reply brief, I think we very clearly in fact, I asked Judge O'Grady whether he considered this issue of the ability to transfer the economic interest. Okay, but it's normally not an accepted practice to raise an issue in a reply brief. We did not raise it in a reply brief. We answered what he said. We raised it in our opening brief. We raised the same things we raised at the district court level with Judge O'Grady. And in fact, I asked Judge O'Grady had he considered those aspects of the ability to transfer the economic interest. Where is that in the record where you raised it before the district court? Judge O'Grady, do you have that? One moment, Your Honor. Well, in one place on page of the record A585, we have Mr. Evans talking about the restrictions applied. There are two components, an economic one and a governance one. That was in response to our arguments in the records. I apologize, Your Honor, I don't have that, but we did cite it in the, quite quoted it in our brief of what that colloquy was. And again, we placed directly before the court, and we feel very strongly that we did, this whole issue that there's a severable interest. We've cited the Ott v. Monroe case, which is the Virginia case, not on point, but recognizes that separation between the control interest and the economic interest. We cited the Colorado cases, the Montana cases, and the Connecticut cases, all before the district court below. And again... Mr. Evans? Thank you, Your Honor. May it please the court, I was just looking quickly to see if I could help Your Honor, Judge Thackeratt, with your question. And I couldn't find it right off hand, but I will tell you, my distinct recollection is, he didn't say exactly what he said. What he said was, does that apply to the economic interest as well as the governance interest? And the answer was yes. He never raised the restraint of trade issue. What he said was, first, in his opposition to, his reply to my opposition to the motion to dismiss is, he said, look, this case belongs in Maryland, because the economic interest belongs to the trust. That position was rejected, and he used that in support of his subject matter jurisdiction argument. And let me just say this, Your Honor. The issue of whether or not a partnership interest is servable, and what effect that may have on the facts of a particular case, is not saying that you can't take a look at the statute 5075.47, I think it is. Let me ask you this. I've asked the previous counsel, I said, as I read the partnership agreement as a whole, 602A and 602E, it seems to, it seems that the thrust of it is to provide a certain protection to family members in terms of the way in which the shares are held. Absolutely, Your Honor. And I think in the context of this case, we need to remember what the record says about how this partnership came about to be formed in the first place. The property was owned by Mr. Smith and Mr. Zafis' father as general partners. Mr. Zafis, Paul Zafis' father expressed his desire to be able... Why do we care about any of that in looking at what the contract... Well, you don't have to. You don't have to because... So what I wanted to get at is, I think Judge Shedd's absolutely right about that. And the important thing is the contract. But you look at all the contractual provisions in terms of some sort of transfer of the interest. And every one of the provisions that's spelled out has some kind of preference for family members. Sometimes the preference given to family members is that of meeting a bona fide offer by purchasing the person's interest. And that makes sure that when an outsider is brought in, that it's not over the strenuous objections of the family members. And then they said further to protect the family is you don't have to go through the bona fide offer if you give it to another family member. So that's additional protection for the family. But it doesn't say in so many words, you can't bequeath it to a non-family member. And so there's... What your opposing counsel is saying is you're getting there by implication. I would like you to respond, if you would, to Mr. Hayden's argument. Your Honor, I think the words, I think when anybody who reads this objectively is going to conclude that if there's no bona fide offer, and in this case there was none, and you want to give it to a family member, you can do so without having to offer it first to the partnership. The agreement falls in this way. Any transfer to a family member doesn't have to go through the bona fide offer route, but any transfer outside goes through the bona fide offer route. I think that's absolutely right. On this agreement... But you didn't answer his first question. You just stated the conclusion. He says it's done by implication. And I think, is your position... Devising something by will to a third party creates the right of first refusal. Where is that expressly stated? It's not expressed. I will concede that's not expressly stated, but the point is this. So if there's a limitation on devising to a third party, then it has to be by implication if it's there at all, doesn't it? I disagree, because... Well, tell me where the express word is, or explicit language. Well, the language is very express, I believe. It says there are two ways that you can... It doesn't say that. Nothing in this contract says there are two ways. But when you read it, that's what you have to conclude. Why do you have to conclude that? That's where the implication comes in. Why do you have to conclude that? Because I believe that that's what the language clearly says. Tell me just what the strongest language for your point is. I think that he's got a point on the implication, but I think you also have a point in the fact that when you look at the overall agreement, and you look at particularly 602A and 602E, that these folks wanted to take some real steps to keep it within the family, and it makes no sense in light of the agreement taken as a whole that they would just say you can bequeath it to willy-nilly. They're just anybody. I mean, that seemed to me to be... Those seem to me to be the respective arguments here. You see what I'm saying? Yes, I agree. When you consider it as a whole... When the agreement is considered as a whole, they have the very clearly expressed desire to have some family control and transfers made within the family or subject to a family right of first refusal, and would it make sense then to say, well, we don't care about any of that when you bequeath it. It doesn't matter. You can bequeath it to whomever. That seems to me to make sense of all the agreements. On the other hand, there is a little bit of implication going on. And I agree. I see Judge Shedd's point, and I have to agree in what this is saying is we believe, and I think this is what Judge O'Grady concluded, was that under this agreement, under the overall scheme, there's two ways that you can transfer. And we have to remember that partnership law in Virginia says, except as otherwise provided, it's freely transferable. And the limitations here were, you get a bona fide offer from a third party, you have to offer it. And that didn't happen. With respect to family transfers, I think the implication, I see what you're saying there, Judge Shedd. The implication is, with E is you can't give it by will to a third party. And why is that so? It's in the language of the contract, isn't it? Let me ask this. Look at 602 and it says, shall be assignable subject to the following terms and conditions. Correct? Correct. Do you think A is a term and condition? Do you think A is a term and condition? Yes. Do you think B is? Do you think C is? Do you think D is? Do you think E is? They're all subsets that follow after that colon. I don't, that's hard to understand about that. I don't think there's any. Okay. All right. So then you have to read all those subsections in a way that makes sense, don't you? Correct. And isn't it true? That's the law of Virginia. I agree. Well, then you want to, then you know the law of Virginia, then contract interpretation. Give me the reason that 602 E clearly suggests that A does not allow the disposition of the And I'll have to come back to your suggestion. I have to come back to your suggestion. Why wouldn't the answer to that be yes? Sir? Why wouldn't the answer, it wasn't a hostile question. Why wouldn't the answer be that Judge Shedd's question be yes? That you can give it by, you can bequeath it to a non-family member? I don't think that's. Listen. Maybe I'm misunderstanding. A talks, A clearly speaks of disposition by sale to a third, to a bona fide offer of a third, a bona fide offer, correct? Yeah. Correct. But then doesn't E say the sale, leave that aside because that's the same thing as the bona fide offer language that the other side wants to rely on. But then E goes on to say other transfer by a partner, whether by intervivos or by will. So in other words, now this is talking specifically about a transfer in E in addition to a bona fide offer, correct? Correct. Then doesn't it say that that shall not be why would you need to say that if there were not restrictions on wills or other transfers in 602A? I agree. I agree. I think it's just the question I kept having about this case was why suddenly in this situation of a will, would you just throw out all the care that was taken in drafting other provisions to provide at least some protection for the family? And, you know, that's that at least was the question that I was wondering did you wonder if you would have accepted if Kersh and Colin had married or if Colin had extended a bona fide offer, in which case we would be here today. Well, yes, you would be because the Kersh's brother would have accepted the bona fide offer. Well, on the terms I suspect that it was made. So, you know, you and then she probably would not. I don't know what the family dynamics are, but I'm not sure. I'm not sure given the family dynamics that there's no way we wouldn't be here today. This is a family quarrel. But I come back to the point. I don't I just wonder whether your opponent's position leaves family members in a least favored status and whether that runs against the grain of the of the partnership agreement. That wasn't what they wanted. I agree. I think that's absolutely correct. But the problem would be no matter what they wanted, if the contract doesn't do it clearly enough in a way that it can be objectively read, it's just too bad. Isn't that what contract law in Virginia is? That's correct, isn't it? Generally. Yes, sir. I think it's more generally correct. I think it's absolutely correct. That's why I keep going back to the specific language of the document. And do you know another way to get your result other than the way I've just explicated it for you? Isn't that your argument that that shall not be under E shall not be subject to the limitations of 602A suggest that by protecting the transfer of the transfer of the transfer or by will suggest there are restrictions on that as a transfer in a isn't that correct? I think that is correct. And I would say I would say that under the objective interpretation you really can't give it to a third party by by bequeath. Can we use the amended certificate at all? I think you can. You're out of Virginia law. You can use that. I think you can. And that, of course, makes it very clear. Are there any questions about the waiver argument or the argument that with respect with are there any questions with respect to you? We don't have any further. Thank you. Judge Wilkinson, I will just respectfully hopefully put this to rest. Whatever may be a person would want to read in disagreement, the words just aren't there. And I'm not sure that's true, because, you know, they are there when you piece together 6A and and 6B. The question, you know, is the is the family preference in the contract? Yes, it's it's in there by bushels. The family that we're not creating a family. It's not as if we are creating a family preference out of whole cloth. The family preference is in there in abundance. And, you know, this this family went really to some considerable length to maintain a degree of economic interest and control, not just governance control, but also economic interest in what I guess was the family corporation. And maybe they didn't top every, you know, last little in. Sometimes they don't do that, but they went to great lengths to accomplish this. And I understand your argument. But I worry about just completely negating a family's family's intentions as they were carefully worked through in the supervision, as Judge Shedd mentioned. And I appreciate that, Your Honor. I just don't want to take a wrecking ball to a family's intentions. Not every contract ties up every little loose end. But I'll adopt what Judge Shedd had pointed out, regardless of the hardship or or the results that wasn't intended in a contract. If the words aren't there or the words say something different, that's the result. But I'd also like to address the issue of the certificate of partnership, but notably in the complaint that they filed, they relied on that heavily and had not produced a document that was very material to it and even said that it was just found when it hadn't been found. But if the words don't say what you want them to say either, because what you want them to say is you want us to imply an exception for bequests, apply an exception for from transfers for bequests. And they don't say exactly what they want to say. They kind of do when you look at the provisions together. But what you want us to do is add a provision saying that. And by the way, no restriction shall be placed upon the transfer of interest through a bequest. But that's not in the contract either. And so it seems to me that your implication argument really cuts against you in a sense, too, because we would have to read in the bequest exception that you want. Respectfully, Your Honor, I just disagree because the beginning words of that provision say the interest of each limited partnership in the partnership shall be assignable. Unlike, for example, the operating agreement that they wrote, which says you can't do anything with this interest except as provided. So I just respectfully disagree with that. Going back to the certificate issue, Judge Shedd, is that at the time that certificate was signed. Well, first of all, can I say this? I don't want you to spend too much time on that. You may if you want to. I just ask in passing, do you think we can use it? I do not, Your Honor. And I will point out one thing that I don't think clear in my brief, that in the amendment to the partnership at A425 at paragraph five, which is the concluding of the amendment to the partnership, not the certificate, but the partnership, it says that all other respects, all of the agreement of December 29th, 1984 shall remain in full force and effect. And so it doesn't say, and as is set forth in that certificate, I think it's irrelevant. In terms of our obvious disagreement, Your Honor, over the total implications of the agreement is plain words. I still think you have to struggle with the law as presented below. And I think it's in our brief that the economic interest is freely assignable. All of the courts that we've cited, the Connecticut court, the Colorado courts, all demonstrate that courts disfavor these kinds of restrictions, especially when it comes to the economic. That gets us back to the restraint on alienation. Well, not exactly, Your Honor, because we did argue that the economic interest is freely assignable and is severable from the control interest. And if you notice, that's what they talked about in this agreement, the control interest, what the general partners can give a control interest. And therefore, I would have to say that the law favors heavily, especially if interpreting in favor of against the drafter, that the economic interest could be transferred and not defeat the estate plan purpose of Diane Kirsch. Was that spelled out below? I believe it was, Your Honor. We briefed it in our briefs. We raised it with Judge O'Grady, but Judge O'Grady really didn't want to talk about it. And I'd asked him whether he had considered the transfer of the economic interest and whether it applied to that. And he said, yes, I think it applies, but I haven't given that full thought and took it under advisement. And then, frankly, came out with a decision very different than what he said from the bench, which is prerogative of a judge to further review about where the title to this interest reposed. So he was still processing all of this at the time of the oral argument. Well, Mr. Cullen would have had what he wanted. A couple of things on that. There's a dispute of fact where Mr. Zafis says it was Diane Kirsch who said, I don't want to get married. It was Mr. Cullen that didn't want to get married, according to our facts. But it doesn't matter. But number two, what's important? Everybody who wants to get married but can't get married says, I don't want to get married. But number two, I still believe, and we argue, but again, this insinuates into the probate court that Cullen still, as the personal representative or trustee of the family trust, or wherever this court says it reposed, has the ability to sell this interest. It just doesn't devolve by intestacy. All right. We thank you, sir. Thank you. Come down and re-counsel and then we can do our next case.
judges: J. Harvie Wilkinson III, Dennis W. Shedd, Stephanie D. Thacker